**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KAROL J. CHWIESIUK,<br>AGNIESZKA CHWIESIUK,<br><br>Defendants. | Criminal Action No. 21-0536 (CKK) |

**OMNIBUS MEMORANDUM OPINION AND ORDER**
(April 19, 2023)

This criminal case is one of several hundred arising from the insurrection at the United States Capitol on January 6, 2021. Defendants Karol J. Chwiesiuk and Agnieszka Chwiesiuk are charged by information with various misdemeanors. Before the Court are Defendants' [71] Motion in Limine and the Government's [72], [73], and [74] Motions in Limine.

Upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, the Court shall **DENY IN PART** and **GRANT IN PART** Defendants' [71] Motion in Limine. The

---

[1] The Court's consideration has focused on:

- Government's Statement of Facts in Support of Criminal Complaint as to Karol J. Chwiesiuk, ECF No. 1-1 ("Karol Aff.");
- Government's Statement of Facts in Support of Criminal Complaint as to Agnieszka Chwiesiuk, ECF No. 40-1 ("Agnieszka Aff.");
- Defendants' Motion in Limine, ECF No. 71 ("Defs.' Mot.");
- Government's Opposition to Defendants' Motion in Limine, ECF. No. 75 ("Gov.'s Opp'n");
- Defendants' Reply to Government's Opposition, ECF No. 82 ("Defs.' Reply");
- Government's Motion in Limine to Preclude Certain Arguments, ECF No. 72 ("Gov.'s [72] Mot.");
- Defendants' Opposition to Government's Motion in Limine to Preclude Certain Arguments, ECF No. 78 ("Defs.' Opp'n to [72] Mot");
- Government's Motion in Limine to Exclude Improper Character Evidence, ECF No. 73 ("Gov.'s [73] Mot.");
- Defendants' Opposition to Government's Motion in Limine to Exclude Improper Character Evidence, ECF No. 76 ("Defs.' Opp'n to [73] Mot");
- Government's Motion in Limine to Preclude Certain United States Secret Service

Court **DENIES** Defendants' motion to preclude use of the terms "insurrectionist" and "insurrection" but will monitor the usage of such terms, if any, for excessive repetition, and will also consider Defendants' objections at trial, if any, should the Government refer to Defendants themselves as insurrectionists, which they have indicated they will not do.  The Court also **DENIES** Defendants' motion to preclude the Government and its witnesses from using words that may suggest conclusions as to an ultimate issue due to the fine line between ultimate conclusion and helpful fact, which is context-dependent.  The Court **DENIES AS MOOT** Defendants' motion to exclude a text message from Karol Chwiesiuk on January 6, 2021 stating he "Knocked out a commie last night" as the Government has indicated that they will not introduce or elicit testimony of this message.  The Court **DENIES** Defendants' motion to exclude parts of text messages from Karol Chwiesiuk on January 3, 2021 about "fuck[ing] up commies."  The Court **DENIES AS MOOT** Defendants' motion to exclude portions of text messages about a "[t]oken black guy" and Karol Chwiesiuk's message "[t]here's so many blacks here I'm actually in disbelief" as the Government has indicated that they will not introduce or elicit testimony of this message.  The Court **GRANTS** Defendants' motion to exclude Karol Chwiesiuk's text message stating ""N****".  The Court **GRANTS** the Government's [72], [73], and [74] Motions.

## I.     BACKGROUND

### A.  Certification of the 2020 Presidential Election and Capitol Riot

The Twelfth Amendment of the United States Constitution provides that, after the members

---

Questioning, ECF No. 74 ("Gov.'s [74] Mot.");
- Defendants' Opposition to Government's Motion in Limine to Preclude Certain United States Secret Service Questioning, ECF No. 77 ("Defs.' Opp'n to [74] Mot.");
- Government's Omnibus Reply, ECF No. 80 ("Gov.'s Reply").

In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motions.

of the Electoral College "meet in their respective states and vote by ballot for President and Vice-President," they "shall sign and certify [their votes], and transmit [them] sealed to the seat of government of the United States, directed to the President of the Senate." U.S. Const. amend. XII. The Vice President of the United States, as President of the Senate, must then, "in the presence of the Senate and House of Representatives, open all the certificates[,], and the votes shall then be counted." *Id.* To count the votes and "declar[e] the result" of the Electoral College, federal law mandates that "Congress shall be in session on the sixth day of January succeeding every meeting of the electors" and that "[t]he Senate and House of Representatives shall meet in the Hall of the House at the hour of 1 o'clock in the afternoon on that day." 3 U.S.C. §§ 15–16.

Pursuant to the Constitution and federal law, Congress convened in a joint session on 1:00 PM on January 6, 2021 to count the votes of the Electoral College and certify the results of the 2020 Presidential Election, which had taken place on November 3, 2020. See Agnieszka Aff. at 1; Karol Aff. at 1. With then-Vice President Michael R. Pence presiding, proceedings began and continued until 1:30 PM, when the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to debate and consider an objection to the Electoral College vote from the State of Arizona. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.* Shortly before noon, then-President Donald J. Trump took the stage at a rally of his supporters staged just south of the White House. *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021). Then-President Trump declared that the election was "rigged" and "stolen," and urged the crowd to "demand that Congress do the right thing and only count the electors who have been lawfully slated." *Id.* at 18 (cleaned up). During and after then-President Trump's speech, a mass of attendees marched on the Capitol. *See id.*

As they gathered outside the Capitol, the crowd faced temporary and permanent barricades

and Capitol Police positioned to prevent unauthorized entry to the Capitol.  *United States v. Rivera*, 607 F. Supp. 3d 1, 4–5 (D.D.C. 2022) (CKK).  Although police "engaged in combat with the rioters to prevent them from… breaking police lines," the police were ultimately unsuccessful.  *Id.* at 5 (internal quotation marks omitted).  Rioters smashed through doors and windows to the Capitol building beginning shortly after 2:00 pm.  *Id.*  The insurrection "desecrated [the Capitol], blood was shed, and several individuals lost their lives."  *Thompson*, 20 F.4th at 19.  All told, "[t]he events of January 6, 2021 marked the most significant assault on the Capitol since the War of 1812."  *Id.* at 18–19 (footnote omitted).

### B.  Events Specific to Defendants

Allegations of Karol and Agnieszka Chwiesiuk's actions are included in the Superseding Information and the Statement of Facts in support of their Criminal Complaints.[2]  On January 3, 2021, Defendant Karol Chwiesiuk informed a friend via text message that he was "going to dc… To save the nation" and that he would "fuck up some commies."  Karol Aff. at 7.  He traveled from Chicago, Illinois to Washington, D.C. on January 5, 2021.  *Id.* at 4.  It can be assumed that his sister Agnieszka Chwiesiuk traveled with him; she resides in Chicago, and there was a hotel booked in D.C. under her name that night.  *Id.*; Agnieszka Aff. at 2.  On January 6, 2021, both Defendants attended then-President Trump's rally at the Ellipse; they then walked to the U.S. Capitol building together.  *Id.* at 5.  Ms. Chwiesiuk entered the Capitol through the smashed doorway of the Senate Wing Door at approximately 2:58 pm.  *Id.* at 7.  Mr. Chwiesiuk also entered the Capitol building with the crowd of rioters.  Karol Aff. at 17.  Just after 2:58 pm, Mr. Chwiesiuk

---

[2] "It is appropriate if not necessary to rely on other official documents for the specific factual allegations underlying the [ ] Indictment, as the indictment itself contains few, if any, details about [Defendant's] alleged conduct."  *United States v. McHugh*, 583 F. Supp. 3d 1, 8 n.2 (D.D.C. 2022) (JDB); *accord United States v. Mostofsky*, Crim. Action No. 21-138, 2021 WL 6049891 at *1 (D.D.C. Dec. 21, 2021) (JEB).

texted a friend with a selfie taken inside a Senator's office and the message "We inside the capital lmfao." *Id.* at 10–12. The two Defendants walked through the Capitol Crypt, where they took photos. *Id.* at 14–15; Agnieszka Aff. at 7–8. They then left through a broken window near the Senate Wing Door. *Id.* at 8; Karol Aff. at 14. Footage shows Ms. Chwiesiuk leaving at approximately 3:08 pm. Agnieszka Aff. at 9.

### C. Procedural History

Defendants were charged by [54] Superseding Information with: (1) Entering or Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly or Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); (3) Entering or Remaining in a Room Designated for the Use of a Member of Congress, in violation of 40 U.S.C. § 5104(e)(2)(C)(i), only as to Karol Chwiesiuk; (4) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (5) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

Both Defendants have rejected plea offers extended by the Government. *See* Minute Order, Aug. 23, 2022 (Karol Chwiesiuk); Minute Order, Feb. 23, 2023 (Agnieszka Chwiesiuk). The parties are set to go to trial in May 2023. On March 3, 2023, Defendants Karol J. Chwiesiuk and Agnieszka Chwiesiuk filed the pending [61] Motion to Transfer Venue, which the Court denied in its [67] Order and [68] Memorandum Opinion.

On March 24, 2023, Defendants filed the pending [71] Motion in Limine and the Government filed the pending [72], [73], and [74] Motions in Limine. All motions are now ripe for this Court's consideration.

## II.      DISCUSSION

### A.  Defendants' Motion in Limine

In their [71] Motion, Defendants seek to exclude two categories of evidence, arguing that admission would unduly prejudice them under Federal Rule of Evidence 403.  First, they move to preclude the Government and Government's witnesses from using certain terminology they deem prejudicial.  Second, they move to preclude the Government from introducing evidence of text messages involving Karol Chwiesiuk that they deem prejudicial.  The Court now addresses these in turn.

### 1.  Motion to Exclude Use of Certain Terminology

Defendants move to preclude the use of the term "insurrectionist" or "insurrection."  Defs.' Mot. at 2.  In response, the Government stated that it "does not intend to refer to the defendants as 'insurrectionists'" but, more generally, that it "should not be required to dilute its language and step gingerly around the events of January 6, 2021."  Gov.'s Opp'n at 8.

As this Court and other courts in the United States District Court for the District of Columbia have stated previously, what occurred on January 6, 2021 was in fact an insurrection and involved insurrectionists and, therefore, the terms to which Defendants object are accurate descriptors.  *See, e.g.*, *United States v. Chwiesiuk*, No. 21-536 (CKK), 2023 WL 2562517, at *1 (D.D.C. Mar. 17, 2023); *United States v. Carpenter*, 21-cr-305-JEB, 2023 WL 1860978, at * 4 (D.D.C. Feb. 9, 2023); *United States v. Griffith*, 21-244-2 (CKK), 2023 WL 2043223, at *3 n.5 (D.D.C. Feb. 16, 2023).  And, as this Court and other courts in this District have held, the Government will be permitted to use such words at trial.  *See, e.g.*, *Griffith*, 2023 WL 2043223, at *3; *Carpenter*, 2023 WL 1860978, at * 4.

The Court therefore **DENIES** Defendants' motion to preclude use of the terms

"insurrectionist" and "insurrection."  However, the Court will monitor any such use "to guard against potential prejudice from… excessive repetition," as other courts in this District have done. *Carpenter*, 2023 WL 1860978 at *4.  Likewise, the Court will consider Defendants' objections at trial, if any, should the Government refer to the Defendants *themselves* as "insurrectionists"— which they indicate that they do not plan to do—as such use of the word is different from use of the word generally.  *See United States v. Rhine*, No. 21-0687 (RC), 2023 WL 2072450, at *8 (D.D.C. Feb. 17, 2023) (holding that the Government may not argue or elicit testimony that Defendant participated in an "insurrection" or was an "insurrectionist" absent a specific showing).

Defendants also move to "preclude the [G]overnment and its witnesses from using words that suggest the legal conclusions the jury will be asked to determine."  Defs.' Mot. at 3. Specifically, Defendants state that "a witness should not be permitted to testify that the defendants were engaging in 'disorderly conduct,' or were 'demonstrating,' or 'trespassing.'" *Id.*  The Court agrees with Defendants that neither the Government nor its witnesses are permitted to testify to an ultimate conclusion of law.

In their response, the Government states that they do "not intend to elicit impermissible legal conclusions[,] [b]ut whether a witness's use of a word is impermissible may depend on the question asked and the context of the answer."  Gov.'s Opp'n at 10.  The Court agrees with the Government on this point regarding the use of certain words more generally, as "the line between an inadmissible legal conclusion and admissible assistance to the trier of fact in understanding the evidence or in determining a fact in issue is not always bright." *Burkhart v. WMATA*, 112 F.3d 1207, 1212 (D.C. Cir. 1997).  Furthermore, certain words have meaning both as vernacular and as a legal term, *see id.* at 1213, which changes their import and potential effect on the jury.

Because the line between ultimate conclusion and helpful fact is so context-dependent, the

Court will exercise its discretion in this case to defer ruling until trial, where Defendants may object to the use of certain terms should an issue arise. *See Herbert v. Architect of Capitol*, 920 F. Supp. 2d 33, 38 (D.D.C. 2013) (CKK). The Court therefore **DENIES** Defendants' motion to preclude the Government and its witnesses from using words that may suggest a conclusion as to an ultimate issue.

### 2.  Motion to Exclude Text Messages

Next, Defendants move to preclude the Government from introducing evidence of specific text messages involving Karol Chwiesiuk that were included in the [1] Criminal Complaint. Defs.' Mot. at 4.

First, Defendants seeks to exclude portions of messages sent to a friend on January 3, 2021 and January 6, 2021 that "suggest[] he planned to engage in violence, or did engage in violence against 'commies.'" Defs.' Mot. at 4. Defendants explain that "'commie[]' is likely shorthand for 'communist.'" *Id.* at 5. On January 3, 2021, Chwiesiuk wrote "Im fuck up some commies" and, later, "Busy planning how to fuck up commies." *See id.* at 4. On January 6, 2021 at 11:28 am, he texted a friend "Knocked out a commie last night." *See id.* Defendants argue that these portions of the texts are not relevant to the charged offenses and, additionally, "because there is no context to this conversation with an unidentified subscriber, there is no indication of to whom exactly Mr. Chwiesiuk refers or whether the statements were made in jest." *Id.* at 4–5. Defendants continue that the probative value, if any, of these messages is substantially outweighed by the risk of prejudice by "suggest[ing] to the jury that Mr. Chwiesiuk is a violent person" and "creat[ing] a risk that the jury will be biased for Mr. Chwiesiuk for his political beliefs." *Id.* at 5.

The Government responds that it does not intend to introduce or elicit testimony of Karol Chwiesiuk's text on January 6, 2021 reading "Knocked out a commie last night." Gov.'s Reply at

10–11.  The Court therefore **DENIES AS MOOT** Defendants' motion as to that portion of the text message from January 6, 2021.

As for Karol Chwiesiuk's text messages from January 3, 2021, the Government argues that his messages "Im fuck up some commies" and "Busy planning how to fuck up commies" are relevant to his intent on January 6.  Gov.'s Reply at 11.  They contend that such statements "show that he was not simply planning to travel to D.C. as a tourist—he intended to engage in disruptive behavior."  *Id.* at 12.  The Court finds that Karol Chwiesiuk's intent matters, as two of the charged offenses require *mens rea* of "knowingly", *see* 18 U.S.C. § 1752(a)(1) and (a)(2); 40 U.S.C. § 5104(e)(2)(D), and the text messages are purportedly proof of that intent.  The Court therefore **DENIES** Defendants' motion as to those parts of the text messages from January 3, 2021.

Defendants also seek to exclude portions of texts that include racialized language and slurs. *See* Defs.' Mot. at 5–6.  In one message, Karol Chwiesiuk responds to a question "Token black guy?" by saying "There's so many blacks here I'm actually in disbelief."  *Id.* at 6.  On January 13, 2021, he writes "N****[3] Don't snitch."  *Id.* at 6.  As above, Defendants argue that these messages are not relevant to the charged offenses and that they create a risk of undue prejudice by suggesting to the jury that Karol Chwiesiuk holds racist beliefs.  *See id.*

The Government responds that it does not intend to introduce or elicit testimony about the portion of Karol Chwiesiuk's text conversation about a "[t]oken black guy" nor his message "[t]here's so many blacks here I'm actually in disbelief."  Gov.'s Reply at 11.  The Court therefore **DENIES AS MOOT** Defendants' motion as to that portion of the text message.

As for Karol Chwiesiuk's text saying "N**** Don't snitch," the Government indicates that this message "within the context of the conversation shows consciousness of guilt."  Gov.'s Reply

---

[3] The Court has used censored language, but Karol Chwiesiuk did not.

at 13.  The Government then argues that  his "use of this offensive term shows that he is speaking frankly and candidly" and "makes the statements within the conversation more compelling because it shows that the defendant did not believe that he needed to censor himself."  *Id.*  The Government continues that they intend to use that portion of Chwiesiuk's message to show that he was communicating with someone he trusted, not to suggest that he holds racist beliefs, and therefore they would not object to a limiting instruction should Defendants request one.  *Id.*

In reply, Defendants argue that redacting the word would not compromise the Government's purpose in attempting to demonstrate consciousness of guilt.  Defs.' Reply at 3. The Court agrees.  As for showing that Karol Chwiesiuk did not feel the need to censor himself, Defendants explain that there is nothing suggesting that the Defendant believed that he was not communicating with a trusted friend such that the Government would have to provide rebuttal evidence.  *Id.*  Again, the Court agrees.  The Court holds that the inclusion of the unredacted word "N****" does not add to the probative value of Karol Chwiesiuk's text message such that it is substantially outweighed by the danger of prejudice in presenting the jury with such a highly offensive term.  *See* Fed. R. Evid. 403.  Accordingly, the Court **GRANTS** Defendants' motion regarding this portion of the text message and **ORDERS** that the Government redact the word "N****" entirely from the message.

### B.  The Government's Motions in Limine

The Government filed three Motions in Limine: (1) to preclude Defendants from making certain arguments and evidence about law enforcement, *see* ECF No. 72; (2) to exclude certain character evidence about Karol Chwiesiuk, *see* ECF No. 73; and (3) to limit cross-examination of United States Secret Service ("Secret Service"), *see* ECF No. 74.  The Court proceeds to each request in turn.

**1.  Motion to Exclude Arguments and Evidence About Law Enforcement**

The Government moves to preclude defense arguments and evidence about law enforcement, specifically: "(1) arguing any entrapment by estoppel defense related to law enforcement; (2) offering evidence or argument concerning any claim that by allegedly failing to act, law enforcement made the defendants' entry into the United States Capitol building or grounds or their conduct therein lawful; or (3) arguing or presenting evidence of alleged inaction by law enforcement unless the defendants [] observed[,] were otherwise aware of such conduct," Gov.'s [72] Mot. at 1, or "were adequately nearby the alleged inaction at the correct time to have perceived and understood such inaction as giving permission to the defendants to enter the Capitol," Gov.'s Reply at 7.

In response to the first two categories, Defendants respond that they "have no intention of introducing evidence nor argument that a government agent actively misled them, rendering their conduct legal on a theory of entrapment by estoppel" nor will they "argue that law enforcement's inaction rendered [Defendants'] conduct lawful on a theory of entrapment by estoppel" and, therefore, those portions of the Government's motion should be denied as moot.  Defs.' Opp'n to [72] Mot. at 2.

As for an entrapment by estoppel theory, case law is clear that it is "a narrowly tailored defense, available in very limited circumstances."  *See United States v. Chrestman*, 525 F. Supp. 3d 14, 30 (D.D.C. 2021) (BAH).  In *United States v. Chrestman*, the court explained that the President of the United States cannot, in keeping with his constitutional authority, "sanction conduct that strikes at the very heart of the Constitution and thus immunize from criminal liability those who seek to destabilize or even topple the constitutional order."  *Id.* at 33.  The very same court has since explained that "[t]he logic in *Chrestman*… applies with equal force to government

actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." Mem. & Order at 2, *United States v. Williams*, Crim. No. 21-377 (BAH) (D.D.C. June 8, 2022), ECF No. 87. Additionally, settled case law makes clear that officer inaction cannot sanction unlawful conduct. *See Cox v. Louisiana*, 379 U.S. 559, 569–70 (1965); *Williams*, ECF No. 87 at 2. Therefore, notwithstanding the Defendants' representation that they will not offer such evidence, the Court **GRANTS** the Government's motion to preclude Defendants from arguing any entrapment by estoppel defense related to law enforcement or from offering evidence or argument concerning any claim that by allegedly failing to act, law enforcement made the Defendants' entry into the United States Capitol building or grounds or their conduct therein lawful.

As for the next part of the Government's [72] motion, they object to Defendants' introduction of law enforcement action or inaction without showing that Defendants knew, were aware *or* "were adequately nearby the alleged inaction at the correct time to have perceived and understood such inaction as giving permission to the defendants to enter the Capitol." Gov.'s Reply at 7. They state that they do "not object to the introduction of this type of evidence [i.e., of police action or inaction] for a purpose that is proper and has a foundation that relates to that purpose." *Id.* With this clarification, the Court agrees with the Government and holds in line with numerous other courts in this District. *See Rhine*, 2023 WL 2072450, at *10; *Williams* at 3–4. The Court **GRANTS** the Government's motion to preclude Defendants from arguing or presenting evidence of alleged inaction by law enforcement, for the purpose of supporting an argument that they had permission to enter the Capitol, unless the Defendants specifically observed, were aware of, or could have reasonably perceived such conduct.

### 2.  Motion to Limit Character Evidence About Karol Chwiesiuk

The Government moves to preclude Defendant Karol Chwiesiuk from "offering evidence of specific instances of his prior good conduct, including that derived from his career in law enforcement," if offered to prove his general good character "such as attention to duty, commitment to public service, professionalism, or dedication"; the Government contends this is improper character evidence under Federal Rules of Evidence 404(a)(1) and 405(a).  Gov.'s [73] Mot. at 1, 4.  More specifically, the Government seeks to preclude "accolades, awards, medals, commendations, certificates, letters, performance reviews, and other records from his service in the [Chicago Police Department]." *Id.* at 1.  In response, Defendants argue that "Mr. Chwiesiuk's career as a police officer demonstrates his prior adherence to the law," which they allege is "connected to the heart of the charges in this case."  Defs.' Opp'n to [73] Mot. at 2–3.

The Court finds that evidence of Karol Chwiesiuk's prior good conduct, such as awards and commendations received as a police officer, is not pertinent to essential elements of the charges pending against him.  *See, e.g.*, *United States v. Washington*, 106 F.3d 983, 999–1000 (D.C. Cir. 1997); *United States v. Irving*, No. 07-107 (PLF), 2008 WL 163653, at *1 (D.D.C. Jan. 18, 2008). Furthermore, using this prior conduct to demonstrate prior adherence to the law, as Defendants suggest, *see* Defs.' Opp'n to [73] Mot. at 3, is exactly the type of argumentation prohibited by the Federal Rules of Evidence.  Numerous other courts in this District have granted similar motions related to January 6 defendants with law enforcement backgrounds.  *See, e.g.*, Mem. Op. at 2–3, *United States v. Carpenter*, Crim. No. 21-CR-305 (JEB) (D.D.C. Feb. 9, 2023), ECF No. 78 ("This Court will [] prohibit [defendant] from introducing specific prior acts of peacefulness or nonviolence, including from her time as an NYPD officer"); Order at 1–2, *United States v. Webster*, Crim. No. 21-CR-208 (APM) (D.D.C. Apr. 13, 2022), ECF No. 75 ("Defendant shall not

be permitted to offer extrinsic evidence of prior professional commendations").

The Court **GRANTS** the Government's motion to preclude Defendant Karol Chwiesiuk from offering evidence of prior good conduct, including that derived from his time at the Chicago Police Department. As the Government makes clear, and which is again consistent with other courts in this District, the Government's motion and this Court's holding does not concern reputation or opinion testimony about Defendant's traits that may be pertinent to the charged offenses. *See* Gov.'s Reply at 4; *Carpenter*, ECF No. 78 at 3; *Webster*, ECF No. 75 at 2.

### 3. Motion to Limit Cross-Examination of Secret Service

Finally, the Government moves to limit cross-examination of witnesses with the Secret Service Agency. Gov.'s [74] Mot. at 1. The Government indicates that "unless a prior stipulation is reached, the government will call a witness from the United States Secret Service to testify that at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Michael Richard Pence and his two immediate family members, all of whom were present at the Capitol." *Id.* at 1–2. They continue that the Secret Service's role "implicates sensitive information related to… national security" and therefore requests that Defendants be foreclosed from questioning such witnesses about: "(1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur; and (2) Details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees." *Id.* at 2.

As for the second category of questioning, Defendants represent that they do not intend to question the witness about the general nature of protective details, and therefore the motion as to second category of questioning should be denied as moot. Defs.' Opp'n to [74] at 1. Notwithstanding this representation, the Court finds that such cross-examination would be

immaterial to the question of Defendants' guilt and the credibility of the Secret Service witness, while potentially undermining national security. *Cf.* Order at 4, *United States v. Griffin*, Crim. A. No. 21-092 (TNM) (D.D.C. Mar. 18, 2022), ECF No. 92. The Court **GRANTS** the Government's motion as to this questioning, consistent with other courts in this District. *See id.*

As for the first category of questioning, Defendants again represent that they "do not intend to inquire into the general protocols for protecting individuals in emergencies nor the locations that have been designated for use by protectees in such situations" and that therefore, "to the extent that the government seeks to bar only questions about general Secret Service protocols on other occasions not related to the case at hand, the motion should be denied as moot." *See* Defs.' Opp'n to [74] at 2. Again, notwithstanding this representation, the Court finds that such cross-examination would be immaterial to the question of Defendants' guilt and the credibility of the Secret Service witness, while potentially undermining national security, and therefore **GRANTS** the Government's motion as to this questioning. *See Griffin*, ECF No. 92 at 4.

Next, the Government clarifies in reply that they agree that Defendants should be "permitted to inquire into the location of the vice president in this emergency, including when and to what location he was taken." Gov.'s Reply at 5 (quoting Defs.' Opp'n to [74] at 2). However, the Government continues, Defendants should not be allowed to inquire about greater details, such as "questions about the former Vice President's precise movements within the Capitol or the timing of those movements" because "[p]recisely how and where he was protected at each moment of January 6, 2021, is not relevant" and has security risks. Gov.'s Reply at 5–6. The Court **GRANTS** the Government's motion as to more specific questioning only insofar as it precludes Defendants from inquiring into the Vice President's precise movements on January 6, 2021.

### III.   CONCLUSION AND ORDER

For the foregoing reasons, the Court shall **DENY IN PART** and **GRANT IN PART** Defendants' [71] Motion in Limine.

The Court **DENIES** Defendants' motion to preclude use of the terms "insurrectionist" and "insurrection" but will monitor the usage of such terms, if any, for excessive repetition, and will also consider Defendants' objections at trial, if any, should the Government refer to Defendants themselves as insurrectionists, which they have agreed they will not do.  The Court also **DENIES** Defendants' motion to preclude the Government and its witnesses from using words that may suggest conclusions as to an ultimate issue due to the fine line between ultimate conclusion and helpful fact, which is context-dependent.

The Court **DENIES AS MOOT** Defendants' motion to exclude a text message from Karol Chwiesiuk on January 6, 2021 stating he "Knocked out a commie last night" as the Government has indicated that they will not introduce or elicit testimony of this message.

The Court **DENIES** Defendants' motion to exclude parts of text messages from Karol Chwiesiuk on January 3, 2021 about "fuck[ing] up commies."

The Court **DENIES AS MOOT** Defendants' motion to exclude portions of text messages about a "[t]oken black guy" and Karol Chwiesiuk's message "[t]here's so many blacks here I'm actually in disbelief" as the Government has indicated that they will not introduce or elicit testimony of this message.

The Court **GRANTS** Defendants' motion to exclude Karol Chwiesiuk's text message stating ""N****" and **ORDERS** that the Government redact the word "N****" entirely from the message.

Finally, the Court **GRANTS** the Government's [72], [73], and [74] Motions.

16

The Court makes these evidentiary rulings on the present record and may revisit them at trial.

**SO ORDERED**.

Dated: April 19, 2023

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge