UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>[1] KAROL J. CHWIESIUK,<br>[2] AGNIESZKA CHWIESIUK,<br><br>Defendants. | Criminal Case No. 21-cr-536 (ACR)<br>Judge Ana C. Reyes |

## ORDER REGARDING TRIAL PROCEDURES

The Standing Order for Criminal Cases, available on Judge Reyes' webpage, is supplemented as follows:

1. **Trial Schedule**. The trial will begin with jury selection on **Monday, August 7, 2023, at 9:30 a.m. in Courtroom 12.** Unless the parties are otherwise notified, the Court will convene the evidentiary portion of the trial from **9:30 a.m. to 12:30 p.m.** and **1:30 p.m. to 5:00 p.m.**, **Monday through Friday**, with a brief mid-morning and mid-afternoon recess. Counsel should be prepared to deliver their opening statements promptly after the jury has been selected, sworn-in and preliminary instructions have been delivered by the Court.
    a. Exhibits, charts, or summaries to be used in opening statements must be cleared with counsel for the other side prior to the opening statements, and if any party objects, such objections must be submitted to the Court for resolution by **noon on August 5, 2023.**
    b. Immediately after opening statements, the government must be prepared to call its first witness.
    c. Unless otherwise instructed by the Court, counsel and defendants should be present in the courtroom each morning at least fifteen minutes before trial begins to address any preliminary matters. Trial before the jury will convene promptly at the designated time on each trial day to avoid keeping the jury waiting.

2. **General Courtroom Rules**. In addition to exercising civility, counsel shall, unless leave is otherwise granted:
    a. examine witnesses from the lectern and refer to all individual parties and witnesses, over the age of 18, as "Mr." or "Ms." rather than by a first name or nickname;
    b. request permission before approaching a testifying witness;
    c. stand when raising objections;
    d. direct all statements for the record to the Court rather than to the opposing party.

3. **Jury Selection Process**.  An outline of the jury selection process to be used in this criminal matter is set forth in **Attachment A** to this Order.

4. **Technical Equipment**.  Counsel needing technical assistance with courtroom equipment (*e.g.,* overhead projectors, video display monitors) must contact the Courtroom Technology Administrator of the Clerk's office at (202) 354-3019.

5. **Statement of the Case**.  The Court intends to describe the case to the venire panel as follows:

In this case, the defendants, Karol J. Chwiesiuk is charged with violating five separate federal criminal laws and Agnieszka Chwiesiuk is charged with violating four separate federal criminal laws based on their actions at the U.S. Capitol on January 6, 2021, when the United States Congress was scheduled to meet inside the U.S. Capitol Building in a joint legislative session to certify the results of the 2020 presidential election.  In summary, the Information charges Karol J. Chwiesiuk and Agnieszka Chwiesiuk with entering and remaining in a restricted building or grounds, disorderly or disruptive conduct in a Capitol Building or in a restricted area, and parading, demonstrating, or picketing in a Capitol Building.  In addition, the Information charges Karol J. Chwiesiuk with entering or remaining in a room designated for the use of a member of Congress.

6. ***Voir Dire* Questions**.  The *voir dire* questions that the Court intends to pose to the venire panel collectively are listed in **Attachment B** to this order.

7. **Motions or Objections During Trial**.
    a. **No evidentiary objections shall be argued in the presence of the jury.**  Counsel must state clearly and succinctly the legal basis for any objection in a word or short phrase.  To protect the record for appellate review, counsel may explain or amplify an objection on the record outside the hearing of the jury or after the jury has been excused.  If counsel plans to engage in a line of inquiry that requires judicial pre-approval, counsel may request a bench conference.

    b. **Bench Conferences should be requested only when necessary** because counsel intends to refer to issues requiring pre-clearance (*e.g.*, anticipated questions or testimony may refer to missing witness or potentially inflammatory subject matter).  Counsel should not expect requests for a bench conference to be routinely granted and should, instead, consider whether the issue counsel wishes to address at the bench can wait until the jury is excused for a recess.

8. **Witness Examination**.
    a. A party calling a witness must arrange for the witness's presence until cross-examination is completed.  Failure to have a witness present for cross-examination is grounds for striking the witness's testimony.  Except in extraordinary circumstances, the Court will not recess the trial due to the unavailability of a witness.

    b. After a non-defendant witness has been tendered for cross-examination and until the witness has been tendered back for redirect, counsel calling that witness (including law enforcement officers or investigators) to testify must have no further discussions with that

witness concerning any aspect of the testimony already given or anticipated.  For a defendant-witness, the Court refers the parties to the guidelines set forth in *United States v. McLaughlin*, 164 F.3d 1, 4–7 (D.C. Cir. 1998), *cert. denied*, 526 U.S. 1079 (1999).

9. **Jury Instructions**.  If events during trial necessitate an immediate jury instruction, counsel requesting the instruction must provide the Court with the text of the proposed instruction; otherwise, the request may be considered waived.  If a party would like an instruction included in the Court's final instructions to the jury, that party bears the responsibility of providing the text requested prior to the charging conference for discussion at the charging conference.

10. **Juror Confidentiality**.  The names and personal information of prospective and selected jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except upon order of the Court.  *See* D.D.C. JURY SELECTION PLAN ¶ 18.1 (updated May 17, 2022), available at https://www.dcd.uscourts.gov/jury-selections.  Counsel and parties are cautioned that violation of this directive may result in contempt proceedings.

**Date:** August 3, 2023

_____
Ana C. Reyes
U.S. District Judge

## ATTACHMENT A TO TRIAL ORDER
### Jury Selection Process

1. <u>Number of Jurors Seated</u>.  As required by the Federal Rules of Criminal Procedure, a unanimous verdict must be returned by a jury of **12** members in criminal trials, absent special circumstances. FED. R. CRIM. P. 23(b) and 31(a).  To provide prudently for the sickness or disability of any juror, two alternate jurors will also be selected.  FED. R. CRIM. P. 24(c)(1).

2. <u>Venire Panel</u>.  The number of panelists is computed by totaling the following: the number of jurors to be selected, the number of alternates to be selected, and the number of peremptory challenges. Thus, in this two defendant case, in which the defendants have 12 peremptory challenges and the government has 6 peremptory challenges, *see* FED. R. CRIM. P. 24(b)(3), plus each side has 1 challenge with respect to alternates, *see* FED. R. CRIM. P. 24(c)(4)(A), individual *voir dire* will be conducted on a sufficient number of prospective jurors to qualify a venire panel, after excusing panelists for cause, of 35 panelists.

3. <u>Location</u>.  The prospective jurors will be seated in Courtroom 12 by the courtroom deputy clerk in the order in which their names appear on the venire list.  The seating arrangement will start with the first-listed prospective juror being placed in the first row of seats located on the left side of the Courtroom 12 as viewed from the bench looking toward the rear of the courtroom.  Prospective jurors will be seated in the order listed on the venire list in sequential order from the left wall to the center aisle and then from the right wall to the center aisle.

4. <u>Venire List</u>.  Counsel will be provided with the written list of the summoned prospective jurors ("venire list") that is randomly generated.

5. <u>Preliminary Matters and Administration of Oath</u>.  After the prospective jurors are seated, Judge Reyes will give a brief introduction, explaining the importance of jury service and the selection process, and the oath will be administered to all prospective jurors.

6. <u>General *Voir Dire* Questions Asked Simultaneously to All Prospective Jurors</u>.  Judge Reyes will decide what *voir dire* questions will be asked after consideration of the proposed *voir dire* questions submitted by the parties as part of the Joint Pretrial Statement and any supplemental argument at the pretrial conference.  FED. R. CRIM. P. 24(a).  The prospective jurors will be collectively asked the *voir dire* questions.  The jurors will be instructed to mark on the index card provided by the courtroom deputy clerk the number of any question to which the juror has an affirmative answer to facilitate any follow-up questions.

7. <u>Individual Responses to Questioning</u>.  After the collective *voir dire* questions have been asked, prospective jurors will be reseated in courtroom 21 (next door).  The venire panel will be instructed not to discuss the case or the *voir dire* questions.  Each prospective juror will then be escorted individually by the courtroom deputy clerk to Courtroom 12 in the order listed on the venire list.  Each prospective juror will be asked follow-up questions about any affirmative response indicated on the paper.  Counsel will have the opportunity to request that Judge Reyes ask additional pertinent follow-up questions of individual jurors at this time.  FED. R. CRIM. P. 24(a)(2).

8. Strikes for Cause.  Strikes for cause should be made immediately after the individual questioning of the prospective juror and will be ruled on promptly.  Any struck juror will be excused from the courtroom.  When 35 prospective jurors have been qualified, following individual *voir dire* and resolution of strikes for cause, the selection process will proceed immediately to the exercise of preemptory challenges.

9. Peremptory Challenges for Regular Jurors.  The 35 qualified prospective jurors will be escorted to Courtroom 12 and seated in the order on the venire list.  Fourteen jurors will be seated in the jury box.  Parties are permitted to challenge only qualified prospective jurors in the venire.  For both regular and alternate jurors, the courtroom deputy clerk will provide the parties with a document upon which they should record their respective peremptory strikes in the order outlined below.

   Peremptory challenges are exercised in **six rounds**: in **each round**, the government exercises one challenge and the defendant exercises two challenges, for a total of six challenges for the government and 12 challenges for the defendants.  In each round, the government will exercise its challenge first.  A pass by any side counts as a strike.  If the government fails to exercise a challenge on a round, and the defendant also fails to exercise a challenge on that same round, the peremptory challenge process for the twelve-person jury will be deemed completed.  The qualified prospective jurors, who have not been stricken, in the order their names appear on the venire list will be the regular jury.

10. Peremptory Challenges for Alternate Jurors.  The government may exercise one peremptory challenge as to qualified prospective alternate jurors, followed by the defendant, who may do the same.  *See* FED. R. CRIM. P. 24(c)(4).

11. Swearing-In Jury.  Following the exercise of any peremptory challenges as to the prospective alternate jurors, the courtroom deputy clerk will ask the remaining fourteen qualified prospective jurors to be reseated in the jury box in the order their names appear on the venire list, with the last two jurors serving as the alternates.  The jury will then be sworn-in.

12. *Batson* Challenges.  Prospective jurors who were stricken on a peremptory challenge will not be excused until the entire selection process has been completed, including the resolution of any challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986).  Counsel are forewarned that should a *Batson* challenge be found to be meritorious, the remedy may be to impanel the improperly stricken juror on the jury and preclude the party who improperly exercised the strike from excluding that juror.  Other remedies to address *Batson* violations are also available, including the imposition of monetary sanctions.  Counsel should therefore be mindful of the obligation not to exercise peremptory challenges that seek to exclude jurors based on race or gender.

**ATTACHMENT B TO TRIAL ORDER**
*Voir Dire* **Questions**

*General Questions*

1. Will the defendants, Karol J. Chwiesiuk and Agnieszka Chwiesiuk, PLEASE STAND. Do you know or have you had any contact with either Karol J. Chwiesiuk or Agnieszka Chwiesiuk?

2. Karol J. Chwiesiuk and Agnieszka Chwiesiuk are represented by Trial Attorney Nishay Sanan, Esq. PLEASE STAND. Do you know or have you had any contact with Mr. Sanan?

3. The United States is represented in this case by Assistant United States Attorneys Anna Krasinski and Assistant United States Attorney Sean P. Murphy. The attorneys are assisted by paralegal Brittany Sheff. Each of these individuals works for the U.S. Department of Justice. Could you each PLEASE STAND. Do you know or have you had any contact with any of these individuals?

4. During the course of the trial, you may hear testimony from or about a number of people. The attorneys will now identify for you the names of people who may testify or about whom you may hear testimony. Listen carefully and, if you recognize or know any of the people named, please write down the name or names and let me know at the appropriate time. The Government's counsel may go first, and then the defendant may list any additional names.

5. Please look around you. Do you know or recognize any other member of the prospective jury panel, the courtroom staff or me?

6. The lawyers have predicted that the presentation of evidence in this trial should last about three days, but it could be shorter or longer. The jury will sit Monday through Friday, generally from 9:30 a.m. to 5 p.m., although the starting and ending times may vary. The length of jury deliberations following the presentation of evidence at trial will be determined by the jury itself. Do you have an urgent or extremely important matter to attend to this week and next, such that you could be faced with a hardship if selected to serve on the jury in this case?

7. Do you have any vision, language, or hearing problems, or any other physical or medical problems, that would make it unusually difficult for you to serve as a juror in this case, to sit for long periods of time without a break, or that might otherwise interfere with your ability to hear or understand what the witnesses say in this case, to view exhibits and photographs, or to give your full attention to this case?

8. Have you, any member of your family or close friend ever studied law or been employed by a lawyer or a law firm, worked in a courthouse, as a paralegal or legal secretary, or performed legal investigative work?

9. Have you, any member of your immediate family, or close personal friend ever been employed by any local, state, or federal law enforcement agency or a private security company? Law enforcement agencies include for example, the Metropolitan Police Department, the U.S. Marshals Service, the Federal Bureau of Investigation (FBI), or the police departments of other

states or cities, including the Chicago Police Department (CPD).

10. Have you, any member of your immediate family, or close personal friend had any experiences with any law enforcement agency or the government that might cause you to favor or disfavor the government or law enforcement?

11. Have you ever filed a complaint against a police officer or anyone in law enforcement?

12. Prior to this case, have you ever served as a juror at a civil trial, a criminal trial, or on a grand jury?

13. Have you, any member of your immediate family, or close personal friend ever been the subject of a criminal investigation, been arrested for, charged with, or convicted of a crime?

14. Have you, any member of your immediate family, or close personal friend ever been a victim of or witness to a crime?

15. Have you ever testified in court or before a grand jury?

16. Do you have any opinions about prosecutors or defense attorneys that might affect your ability to serve fairly and impartially in this trial?

17. Have you, any member of your immediate family, or close personal friend belong to a group or organization that is active in law enforcement or crime victim prevention matters? Some examples of such organizations include: Fraternal Order of Police, Crime Watch, Crime Stoppers, Orange Hats, or other organizations, including any groups on the Internet, which monitor or discuss neighborhood crime issues.

18. One of the defendants in this case is a police officer. Do you believe that police officers should be held to a higher standard than civilians when charged with crimes?

19. I will be instructing the jury in this case that the testimony of law enforcement officers should be treated the same as the testimony of any other witness and that the jury should not give either greater or lesser weight to the testimony of a witness simply because that witness works in law enforcement. Do you have such strong feelings about law enforcement—either positive or negative—that it would be difficult for you to follow this instruction or be a fair juror in the case?

20. The defendants have entered pleas of not guilty to all the charges. In a criminal case, a defendant is presumed innocent unless and until the government proves her guilt beyond a reasonable doubt. Will you have any difficulty accepting or applying this rule of law?

21. To reach a verdict on a particular charge, every juror must agree on the verdict. That is, any verdict must be unanimous. In deliberations you must consider the opinions and points of your fellow jurors, but you must also follow your own conscience and be personally satisfied with any verdict. Would you have difficulty expressing your own opinions and thoughts about this case to your fellow jurors?

22. This case involves evidence recovered during the execution of a court-approved search warrant. Do you have such strong feelings about the execution of court-approved search warrants that would make it difficult for you to be fair and judge this case on the evidence presented in court?

23. Do you know of any other reason that I haven't asked about that would prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case? For example, do you have any moral, religious, or ethical beliefs that prevent you from sitting in judgment of another person?

*Specific Questions Regarding January 6, 2021*

24. Have you, any member of your immediate family, or close personal friend ever been employed at the United States Capitol in any capacity?

25. Do you, any member of your immediate family, or close personal friend live or work near, or have any special familiarity with the United States Capitol or the area surrounding the Capitol?

26. Were you, any member of your immediate family, or close personal friend present at or near the Capitol on January 6, 2021?

27. Have you watched any videos or seen any photographs of what happened at the U.S. Capitol on January 6, 2021?

28. Have you been following the investigation into the events of January 6, 2021, at the United States Capitol in the news media or on the internet? This includes following the investigation generally or following specific cases or individuals.

29. I will be instructing the jury that it may consider only evidence that was properly admitted in this case, and the law as I instruct it, and not anything jurors may have seen or heard outside this courtroom about the events at the U.S. Capitol on January 6, 2021. Is there any reason it would be difficult for you to set aside whatever you have seen or heard and whatever feelings or opinions you have about that, to follow my instructions, and to be a fair juror in this case?

*Background Questions for Individual Voir Dire*

30. What is the highest level of school you completed?

31. What is your current work status?

32. What is your current occupation?

*Requested Follow-up Questions*

33. If you answered "yes" to Question 13 (prior jury service):

    a. What kind of jury did you serve on? Grand jury, or a criminal or civil case?

    b. Have you ever been the foreperson?

    c. Did you reach a verdict?

    d. Was there anything about your experience as a juror which would affect your ability to serve fairly and impartially as a juror at this trial?

34. If you answered "yes" to Question 16 (testifying in court):

    a. What was the nature of the lawsuit?

    b. What was your role in the case?

    c. What was the result?

    d. Was there anything about your experience as a witness which would affect your ability to serve fairly and impartially as a juror at this trial?

35. If you answered "yes" to Question 27 (watching videos or viewing photographs depicting the events of Jan. 6):

    a. What are your primary sources for local and national news?

    b. From what source—that is, what website, social media platform, or news program—did you view those videos, photographs, posts, or other news alert?

    c. Did you watch live news coverage of the events at the United States Capitol on January 6, 2021?

    d. About how many videos have you seen from the events that occurred at the United States Capitol on January 6, 2021?

    e. Do you follow anyone on any social media platform who regularly reports or comments on the events of January 6, 2021?

36. If you answered "yes" to Question 28 (following the Jan. 6 investigation generally or specific cases/individuals):

    a. Did you attend, view, or listen to any portion of any Congressional hearings related to the events that occurred at the United States Capitol on January 6, 2021?

37. If you answered "yes" to Question 19 (holding police officers to a higher standard):

    a. Do you have any strong feelings about police officers that are charged with crimes connected to the events of January 6, 2021?