UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-536 (ACR) |
| v. : | |
| : | |
| [1] KAROL J. CHWIESIUK, : | |
| [2] AGNIESZKA CHWIESIUK, : | |
| : | |
| Defendants. : | |

GOVERNMENT'S OPPOSITION
TO THE DEFENDANT'S RULE 29 MOTION ON COUNT 3

The plain language of 40 U.S.C. § 5104(e)(2)(C) is broad: it prohibits individuals from "willfully and knowingly…with the intent to disrupt the orderly conduct of official business, enter[ing] or remain[ing] in a room in any of the Capitol Buildings set aside or designated for the use of…either House of Congress or a Member." The Statute does not tether the "official business" to the particular room the defendant occupied. Rather, a defendant must simply intend to disrupt official business. *See*, *United States v. Barnett*, No. 21-cr-38 (CPC) (D.D.C. May 5, 2023), ECF 203 at 29-30 (denying Rule 29 motion of a § 5104(e)(2)(C) violation and citing evidence of that defendant's intent to disrupt the joint session of Congress). Moreover, even if the Government were required to prove that the Karol Chwiesiuk intended to disrupt official business in that specific office, when viewed in the light most favorable to the government, there is sufficient evidence to overcome a Rule 29 motion.

I.   **Background.**

Based on their actions on January 6, 2021, defendants Karol and Agnieszka Chwiesiuk are charged with Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); Disorderly or Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D);

and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 54. Defendant Karol Chwiesiuk was additionally charged with Entering or Remaining in a Room Designated for the Use of a Member of Congress, in violation of 40 U.S.C. § 5104(e)(2)(C)(i). *Id*. Trial commenced before a jury on August 8, 2023, and the government rested its case the following day. The Court denied the Chwiesiuks' Rule 29 motions on Counts One, Two, Four, and Five, but requested briefing on the intent required to convict Karol Chwiesiuk on Count Three.

## II.      Federal Rule of Criminal Procedure 29

A judgment of acquittal under Federal Rule of Criminal Procedure 29 may be granted "'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991)). The Court must consider the evidence "in the light most favorable to the government" to determine if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (emphasis in original) (citations omitted); *see also United States v. Olbres*, 61 F.3d 967, 975 (1st Cir. 1995) (holding that a court must draw inferences hospitable to government's theory of the case before judging the strength of the defendant's alternative hypotheses of innocence). The Court "assume[s] the truth of Government's evidence and give[s] the Government the benefit of all legitimate inferences to be drawn therefrom." *Bailey v. United States*, 416 F.2d 1110, 1112 (D.C. Cir. 1969); *United States v. Skinner*, 425 F.2d 552, 554 (D.C. Cir. 1970) ("It is axiomatic on motion for acquittal that . . . the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense.").

### III. The Court Should Not Enter a Judgment of Acquittal on Count Three: Entering or Remaining in a Room Designated for the Use of Either House of Congress or a Member, Committee, Officer, or Employee of Congress, or either House of Congress.

A reasonable jury could find that Karol Chwiesiuk violated 40 U.S.C. § 5104(e)(2)(C)(i), which provides in relevant part that:

> An individual or group of individuals may not willfully and knowingly—
>
> (C) with the intent to disrupt the orderly conduct of official business, enter or remain in a room of the Capitol Buildings set aside or designated for the use of—
>
> (i) either House of Congress or a Member, committee, officer, or employee of Congress, or either House of Congress.

"Official business" includes all matters that directly or indirectly pertain to the legislative process, all congressional representative functions generally, and all actions taken as part of the functioning, working, or operating of Congress. *See* 39 U.S.C. § 3210(a)(2); *Coal. to End Permanent Cong. v. Runyon*, 979 F.2d 219, 222 (1992); *see also United States v. Williams*, No. 21-0618 (ABJ), 2022 WL 2237301, at *12 (D.D.C. June 22, 2022) (finding that official business can include the Electoral College certification).

*a. The Government is not required to prove that the defendant intended to disrupt business occurring in Senator Merkley's Office.*

The issue this Court posed is narrow: does 40 U.S.C. § 5104(e)(2)(C)(i) require an intent to disrupt the orderly conduct of official business *specific to the room that the individual unlawfully enters,* or can a conviction rest on a defendant's intent to disrupt the orderly conduct of official business more generally? The answer is simply that the defendant must possess an intent to disrupt the orderly conduct of official business, an intent which is not tethered to any specific room.

The plain language of the statute is drafted broadly and does not limit a person's intent to a particular location in which the official business is occurring.  This is in keeping with Congress's

interest in "ensuring that the activities of Congress proceed without disruption." *See, e.g.*, *Bynum v. U.S. Capitol Police Board*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000).

Contrasting Section 5104(e)(2)(C)(i) with other provisions in the same code section conforms this plain-text construction.  In Section 5104(e)(2)(D), Congress prohibited disorderly or disruptive conduct "with the intent to complete, disrupt, or disrupt … a session of Congress . . . or . . . a hearing before, or any deliberations of, a committee."  That provision accordingly requires the intent to disrupt a specific type of business within the Congress.  Section 5104(e)(2)(C)(i), by contrast, simply refers to an intent to disrupt "official business."  "Had Congress intended to restrict § [5104(e)(2)(C)] to an interest" in disrupting a specific type of business at the Capitol, "it presumably would have done so expressly as it did in the immediately following subsection." *Russello v. United States*, 464 U.S. 16, 23 (1983).  That Congress instead capaciously referred to "official business" confirms the opposite: the defendant need only harbor the intent to disrupt any official business of the Congress at the time he trespassed in Senator Merkley's office.  *See id*. ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (brackets and citation omitted).

An examination of the parallel subsection, Section 5104(e)(2)(C)(ii), also illuminates this construction.  There, Congress prohibited disorderly or disruptive conduct in any Library of Congress room "with the intent to disrupt the orderly conduct of official business."  Library of Congress rooms are not normally venues for the formal type of "official business" of Congress; many function as book repositories.  If the Court construes this provision to require a specific showing that the defendant acted with the intent to disrupt official business occurring in a particular Library of Congress room, it could impermissibly drain Section 5104(e)(2)(C)(ii) of its practical

force. *See Nat'l Ass'n of Manufacturers v. Dep't of Defense*, 138 S. Ct. 617, 632 (2018) ("As this Court has noted time and time again, the Court is 'obliged to give effect, if possible, to every word Congress used.'") (citation omitted). This Court should accordingly reject this construction—which applies equally to Section 5104(e)(2)(C)(i).

This plain language analysis is separately bolstered by Congressional intent. As Judge Bates articulated in a different January 6 prosecution dealing with a slightly different criminal offense, "the purpose of the Capitol" is identified "as permitting Congress peaceably to carry out its lawmaking responsibilities and allowing citizens to bring their concerns to their legislators." *See United States v. Nassif*, 628 F. Supp. 3d 169, 181 (D.D.C. 2022) (internal citation and punctuation omitted). It makes little sense for Congress to enact a statute that compartmentalizes intent in a way that differs from hallway to hallway or room to room. Rather, Congress chose language that was appropriately broad in nature. *See* §5104(e)(2)(C)(i) ("in a room in *any* of the Capitol Buildings") (emphasis added). In other words, the plain text of the statute "leaves no need to resort to alternative methods of interpretation." *See Nassif*, 628 F. Supp. 3d at 183 ("This language provides sufficient guidance as to what is prohibited."); *United States v. Bingert*, 605 F. Supp. 3d 111, 127 (D.D.C. 2022) ("But none of this historical reasoning recons with the fact that Congress chose to include a second, broader statement about other types of obstruction."); *United States v. Caldwell*, 581 F. Supp. 3d 1, 13 (D.D.C. 2021) (noting that the term "official business" is broader than the term "a proceeding before the Congress.").

In *United States v. Grider*, 21-022, 2022 WL 17829149 (D.D.C. December 21, 2022), Judge Kollar-Kotelly addressed the guilt of a defendant as it pertained to another subsection of the same statute, 40 U.S.C. § 5104(e)(2)(D). In convicting the defendant, the Court noted that:

mere presence in an unlawful mob or riot is both (1) "disorderly" in the sense that it furthers the mob's "disturb[ing] the public peace" and (2) "disruptive" insofar as it disturbs the normal and peaceful condition of the Capitol grounds and buildings, its official proceedings, and the safety of its lawful occupants. Were it not, it must be said that continued presence in a mob that is being tear gassed and pepper sprayed is disorderly insofar as a person's continued presence clearly impedes law enforcement's efforts to regain control of a particular area.

*Id.* at *12.

Here, there is no question that the defendant entered the Capitol building on January 6, 2021, and that he entered a room within the Capitol that was designated for the use of a specific Senator – Senator Jeff Merkley.  Before entering, Karol Chwiesiuk attended the "Stop the Steal" rally.  A reasonable jury can conclude from this, and from the numerous emails and text messages he received and sent, that he knew Congress was meeting in joint session on January 6, 2021, to count the votes of the Electoral College, and he knew official business was under way in the Capitol building.  *United States v. Rivera*. 607 F. Supp. 3d 1, 9 (D.D.C. June 17, 2022) ("[I]t is clear from [defendant's] knowledge of and attendance at the 'Stop the Steal' rally that he knew Congress was meeting in joint session on January 6, 2021."); *see also*, GX 602 (email to Karol Chwiesiuk stating that "[o]ver 100 Members of Congress plan to object to the Election results.").

There is also ample evidence for a rational jury to conclude, making all reasonable inferences in the Government's favor, that this was exactly Karol Chwiesiuk's intent.  Karol Chwiesiuk told his cousin that he was going to DC "[t]o save the nation" and added "Im fuck up some commies."  GX 700.  Testimony established that Karol Chwiesiuk used the term "commies" to mean non-Trump supporters.  And, on January 6, 2021, Karol Chwiesiuk texted, "We have to kurwa save America."  GX 403-034.  While listening to the former President's speech, he texted, "He's leading us to the fucking Capitol."  GX 401-09.  A jury could draw from all of this to infer that Karol Chwiesiuk intended to disrupt the official business on January 6.

The law does not require the Government to prove any more specific intent than Karol Chwiesiuk's intent to disrupt this core and fundamental "official business" of the joint session. Indeed, in *United States v. Barnett,* the only case known to the Government to address the requisite intent to disrupt under § 5104(e)(2)(C), the Court rejected the defendant's Rule 29 challenge. Case No. 21-cr-38 (CPC) (D.D.C. May 5, 2023), ECF 203 at 29-30. There, the defendant was charged with the same offense based on his entering and remaining in the offices of the Speaker of the House, and he challenged the government's proof of his intent to disrupt official business in doing so. Without reference to any requirement that the intent must relate to official business *in the Speaker's office itself*—and instead citing evidence of that defendant's intent to disrupt the joint session of Congress (happening in the House and Senate Chambers)—the Court in *Barnett* rejected a Rule 29 motion. *Id.* at 30. The court found simply that "there was ample evidence for the jury to conclude that [the defendant] intended to disrupt official business, including the session of Congress to certify the electoral votes." *Id.* at 30.

The same is true here. There is ample evidence in this case for the jury to conclude that the defendant intended to disrupt official business throughout all of his actions at the Capitol on January 6. When coupled with the known evidence and the reasonable permissible inference that "the defendant intended the natural and probable consequences of his actions," taken in the light most favorable to the Government, a rational jury could find that the defendant unlawfully entered Senator Merkley's office with the intent to disrupt the orderly conduct of official business even if that official business were happening elsewhere in the Capitol. *See Grider*, 2022 WL 17829149, at *12 (quoting *United States v. Mejia*, 597 F.3d 1329, 1341 (D.C. Cir. 2010)).

>  *b. Even if the Government were required to prove that Karol Chwiesiuk intended to disrupt official business in Senator Merkley's Office, the Government has introduced sufficient evidence to overcome a Rule 29 motion.*

Even if the statute required a defendant to intend to disrupt official business *in that room*, drawing all inferences in the light most favorable to the Government, there is sufficient evidence from which the jury could infer this specific intent. In the light most favorable to the Government, a rational jury could infer that it was obvious that this was a private office. Indeed, upon walking into the office, Baked Alaska asked, "Whose office is this?" *See*, GX 304b, at 00:18-00:43. The room contained a desktop computer and a bookshelf lined with books. *Id*. Artwork and maps adorned the wall and there was a land-line telephone in the corner of the room. *Id.* A rational jury could conclude that Karol Chwiesiuk entered or remained in that office knowing that the room was "set aside or designated for the use of either House of Congress or a Member, committee, officer, or employee of Congress, or either House of Congress[.]" 40 U.S.C. § 5104(e)(2)(C). There is ample evidence from which a jury could infer that he knew he was walking into a designated office in the Capitol building. The statute does not require more.

And the defendant did more than step over the threshold and take a selfie. Based upon the time of the CCV footage, he stayed around Senator Merkley's office for more than a minute. *See*, GX 203a. Furthermore, he occupied the Senator's office along with a large crowd of other unruly rioters. Having bypassed any sort of security, his mere presence in the office—particularly in conjunction with so many others—made it impossible for the Senator or any member of his staff to be present in that office with him.

United States Capitol Police Captain Jessica Baboulis testified that the presence of unauthorized individuals in Senator Merkley private office disrupted the ability of Congress to do its business that day. Rough Transcript of Captain Bablouis testimony, at 58:18-21. At sidebar,

the Court described it as "patently obvious" that the presence of unauthorized individuals in Senator Merkley's hideaway office impacted the safety of the members of Congress. *Id.* at 59:7-20. Not only did it disrupt Congress generally and Senator Merkley and his staff in particular (who, the jury can reasonably infer, was present at the joint session and may have needed his hideaway), but the jury could infer that Karol Chwiesiuk's presence impacted any number of other "actions taken as part of the functioning, working, or operating of Congress." *See*, Court's Proposed Jury Instructions (circulated by email Aug. 2, 2023). That includes all the operations necessary to keep the building open, including the functioning of the very police officers the mob overcame to reach that private office. Because "a factfinder may infer a defendant's intent from the natural and probable consequences of his actions[,]" the jury here may infer that Karol Chwiesiuk's presence in the office, combined with all the other evidence of his intent that day, demonstrates not only his actual disruption but also his intent to disrupt. *See United States v. Shan Shi*, No. 17-CR-110 (CRC), 2019 WL 6879409, at *3 (D.D.C. Dec. 17, 2019) (concluding from defendant's action of taking market share from competitors that he "intended to harm" those competitors) (citing *United States v. Manatau*, 647 F.3d 1048, 1055 (10th Cir. 2011), and *Francis v. Franklin*, 471 U.S. 307, 316 (1985) (holding that while it violates due process for a factfinder to be *required* to find mens rea based on the presumption that a person "is presumed to intend the natural and probable consequences of his acts," a factfinder is *permitted* to infer intent based on a defendant's actions)).

Moreover, the Government need not introduce evidence that the Senator planned to use his office that day. The statute requires that Karol Chwiesiuk *intend* to disrupt the orderly conduct of official business. It does not require him to succeed. Here, a rational jury could reasonably infer that Karol Chwiesiuk intended to disrupt any official use of that office while he occupied it and

intended to disrupt the functioning of the U.S. Capitol Police from regaining control of the space and securing it from unauthorized visitors.

IV. **Conclusion.**

Karol Chwiesiuk entered or remained in the Senator's Office on the afternoon of January 6. And he did so with intent to disrupt the orderly conduct of official business, to include the certification proceeding scheduled for that time as well as all the normal functions of the U.S. Capitol building.  A rational jury could easily find that element satisfied.  Members of the mob, of which Karol Chwiesiuk was a part, entered multiple spaces on the U.S. Capitol designated for the private and secure use of Senators and House Members.  That, in turn, necessitated a security response requiring the House and Senate to suspend the certification proceedings for many hours, and for Members of Congress to evacuate, until the Capitol could be resecured.  Members of Congress could not return and reconvene so long as trespassers (like Karol Chwiesiuk) remained in non-public U.S. Capitol offices and rooms designated for their official use.  The government respectfully requests that the Court deny the motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

DATED: August 10, 2023      By:      /s/Anna Z. Krasinski
Anna Z. Krasinski
Assistant United States Attorney
N.H. Bar No. 276778
202-809-2058
Anna.Krasinski@usdoj.gov

Sean P. Murphy
Assistant United States Attorney
D.C. Bar No. 1187821
787-766-5656
sean.murphy@usdoj.gov