UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-536 (ACR) |
| v. : | |
| : | |
| [1] KAROL J. CHWIESIUK, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE IN OPPOSTION TO**
**DEFENSE MOTION TO MODIFY CONDITIONS OF RELEASE**

On August 17, 2023, defendant Karol J. Chwiesiuk, through his attorney, requested that this Court "enter an order modifying his conditions of release to allow him to possess a [Firearm Owner's Identification (FOID) card] while on release." ECF No. 112, p. 2. This request has already been heard and denied. ECF No. 11 (Motion to Modify Conditions of Release); Minute Order, Aug. 16, 2021 (denying defendant's request to modify conditions to allow him to possess a FOID card). With this motion, Mr. Chwiesiuk points to no changed circumstances or any other factors that should cause this Court to change course; on the contrary, the obvious material change is that a jury has convicted Mr. Chwiesiuk of four of the five the charged offenses. ECF No. 108 (Verdict). Moreover, according to the defendant's own representations to this Court, he received notice in 2021 "from the Illinois State Police that his FOID had been revoked." ECF No. 11, p. 2. Although at that time he "intend[ed] to appeal" that revocation, *id.*, he has not indicated whether any such appeal has been launched or granted. It appears his FOID card is invalid,[1] and this Court should refuse his renewed request to have it returned when the document carries no force or effect.

---

[1] *See* Attachment A, a redacted screenshot showing that Mr. Chwiesiuk's FOID card status is currently listed as revoked. Also included in that attachment are some of the necessary forms that Mr. Chwiesiuk will need to complete and have reviewed by the Illinois State FOID Card Review Board (https://isp.illinois.gov/FoidCardReviewBoard) before his FOID card may be reinstated.

I.      **DEFENDANT'S LIMITED REQUEST SHOULD BE DENIED**

In his renewed motion, Mr. Chwiesiuk asks only "that this Court enter an order modifying his conditions of release to allow him to possess a FOID while on release." ECF No. 112, p. 2. Without reference to the August 2021 denial of a similar request or to the fact that his FOID card is still revoked, Mr. Chwiesiuk asks this Court to revisit the magistrate judge's 2021 ruling. At that time, Mr. Chwiesiuk reported that the FOID card in the possession of the Pretrial Services Division of the Northern District "had been revoked" by the Illinois State Police. ECF No. 11, p. 2. Then, as now, he asserted that "Mr. Chwiesiuk is…required to possess a valid FOID card" as a condition of his employment with the Chicago Police Department. ECF No. 112, p. 1; ECF No. 11, p. 2. This is consistent with the Chicago Police Department Directives attached to Mr. Chwiesiuk's August 2021 motion. ECF No. 11-3 (Exhibit C), p. 1-2 (setting forth policy that "[t]he Chicago Police Department requires all sworn members to have: (1) a *valid* FOID card and possess the FOIC card while on duty[; and] (2) a *valid* FOID card while off duty and in possession of a firearm…" (emphasis added)).

This Court should not allow the defendant to possess a revoked and invalid FOID card. Returning the invalid card serves no useful purpose, and only invites the possibility for misuse. In his motion, Mr. Chwiesiuk suggested that return of a "valid" FOID card is required for his continued employment with the Chicago Police Department. Return of a revoked and invalid FOID card would have no such effect. Moreover, it is not clear Mr. Chwiesiuk is capable of returning to his duty as a sworn Chicago Police Officer even if he were to successfully challenge the Illinois revocation of his FOID card. At the time of Mr. Chwiesiuk's arrest, the Chicago Police Superintendent stated, "There is no place for you in this police department if you are going to

participate in a siege on our U.S. Capitol against our democracy."[2]  Mr. Chwiesiuk indicated to this Court that he was relieved of his police powers when the Chicago Police Department learned of the charges in this case.[3]  Thus, according to Mr. Chwiesiuk and supported by the Superintendent's comments, CPD relieved Mr. Chwiesiuk of his police powers upon learning of the charges, not due to his lack of a FOID card.  Now that Mr. Chwiesiuk is not just accused of committing federal crimes, but has been *convicted* of committing four federal crimes by a jury of his peers, there is no reason to conclude that he is in any way qualified to fulfill the solemn duties of a sworn police officer, or that CPD would entrust Mr. Chwiesiuk with his former police powers even if he had a valid FOID card.

II. **DEFENDANT HAS NOT ASKED AND THE COURT SHOULD NOT ORDER A MODIFICATION TO ALLOW THE DEFENDANT TO POSSESS A FIREARM, DESTRUCTIVE DEVICE, OR OTHER WEAPON**

Although Mr. Chwiesiuk has not asked this Court to modify the condition prohibiting his possession of "a firearm, destructive device, or other weapon" (*see* ECF No. 9, p. 2), it is worth noting that the Court previously addressed this modification and denied it prophylactically. Minute Order, Aug. 16, 2021 ("Irrespective of the FOID, Defendant is still prohibited from possessing any firearms based on the condition of his release in this jurisdiction, which remains in effect.").  This is a Standard Condition of Release and Supervision sought by the government in nearly all criminal cases, including those relating to the January 6, 2021, attack on the United States Capitol.

---

[2] https://wgntv.com/news/chicago-news/chicago-police-officer-charged-with-storming-us-capitol-on-jan-6/

[3] At trial, Dr. Mlodzianowska testified that Mr. Chwiesiuk was on medical leave on January 6, 2021—the time where he walked miles to and from his hotel and around the Capitol, running across the North Lawn, and climbing through a broken-out window.

A prohibition on the possession of firearms is a condition rooted in statute and the U.S. Sentencing Guidelines. It is also a restriction that is uniformly imposed as both a condition of release and a statutory Standard Condition of Supervision for the safety of the supervising officers. *See* Admin. Office of the U.S. Courts Prob. & Pretrial Servs. Office, Overview of Probation and Supervised Release Conditions 34–35 (2016), http://www.uscourts.gov/sites/default/files/overview_of_probation_and_supervised_release_conditions_0.pdf [https://perma.cc/K2LB-9Y99]. "By allowing the probation officer to supervise the defendant without risk to safety caused by the possession of weapons," the manual explains, a firearms restriction "enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition." *Id*. at 35 (citing 18 U.S.C. § 3603(2)–(3)). Consistent with this policy, in all but one case identified by the government, Courts in the District of Columbia have imposed a prohibition against the possession of a firearm, ammunition, destructive device, or dangerous weapon as part of its Standard Conditions of Supervision at sentencing. *See, ex.*, *United States v. [2] Santos-Smith*, 21-CR-271 (EGS), ECF No. 64, p. 5; *United States v. Wickersham*, 21-CR-606 (RCL), ECF No. 28, p. 3; *United States v. Jackson*, 21-CR-484 (RDM), ECF No. 36, p. 3; *United States v. McNicoll*, 21-CR-468 (PLF), ECF No. 34, p. 3; *United States v. Rebegila*, 21-CR-283 (APM), ECF No. 44, p. 3; *United States v. Bensch*, 23-CR-180 (TNM), ECF No. 91, p. 3; *United States v. Entrekin*, 21-CR-686 (FYP), ECF No. 34, p. 4; *United States v. Finley*, 21-CR-526 (TSC), ECF No. 51, p. 4; and *United States v. O'Malley*, 21-CR-704 (CRC), ECF No. 36, p. 3.

A.  **Chief Judge Boasberg's Analysis in *Shaw* Clearly Identifies Why the Prohibition against Firearm Possession Applies to Mr. Chwiesiuk**

Chief Judge Boasberg recently issued an Order granting the government's request to include the Standard Condition of Supervision prohibiting the possession of firearms, ammunition, et al. *United States v. Shaw*, No. 22-CR-1 (JEB), 2023 U.S. Dist. LEXIS 91065 (D.D.C. May 24, 2023).[4] The defendant in that case, like Mr. Chwiesiuk, was charged with misdemeanor offenses. Shaw entered a plea of guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building. The Court sentenced Shaw to a term of ten days incarceration followed by a two-year term of probation. At sentencing, a discussion was held as to the necessity of the Standard Condition of Supervision prohibiting firearms. The issue was fully briefed, and the Court imposed the firearms prohibition on its final judgment and commitment. *Shaw*, 22-CR-1 (JEB), ECF No. 40, p. 5.

In his order grating the government's motion to include the firearms prohibition, Chief Judge Boasberg reasoned that the § 3553(a) factors "strongly favor imposing a firearms restriction during [the defendant's] probation term for several reasons." *Shaw*, U.S. Dist. LEXIS 91065 at *5. Importantly, Chief Judge Boasberg led with the fact that Shaw's conviction,

> derives from his participation in the January 6th insurrection at the United States Capitol. He was part of a violent mob that sought to stop the peaceful transfer of power by force. The nature of that event puts [the defendant's] offense very far from the types of negligent infractions that some circuits have held do not warrant a firearms restriction. [ . . . ] The Court accordingly concludes that, while [the defendant's] role in the mob was minor, the fact of his participation in an insurrection whose aim was to impair the peaceful transfer of power suggests that a firearms restriction during his probationary period is appropriate.

---

[4] Appended hereto as Attachment B.

*Id*. at \*5-\*6. Chief Judge Boasberg also noted that firearms restrictions "serve as an important aid to the Probation Office's oversight" in these cases and "thereby promote public safety per § 3553(a)(2)(C).[5]

**B.     According to Statute and Relevant Guidelines, The Prohibition Against Firearms Possession is Standard and There Is No Reason to Make Mr. Chwiesiuk An Exception**

Since January 6, 2021, nearly 1,100 individuals from nearly all fifty states have been charged with offenses relating to the violent attack on the U.S. Capitol that took place on that day. With just one exception noted below, in all cases of which the undersigned is aware, no defendant convicted in relation to this investigation has been allowed to possess a firearm during any period of incarceration, probation, or supervised release.

Pre-conviction, defendant Charles Hand, III, successfully petitioned the Court for a modification of his Conditions of Release to possess a single firearm for a narrow purpose. Specifically, the defendant Hand wanted to be able to use a .410 shotgun to defend his property against wildlife. *United States v. Hand*, 22-CR-111 (JEB), MINUTE ENTRY (May 18, 2022) (".410 Shotgun Only To Be Used In Defense Of Animals"). Even so, after that individual pled guilty and was sentenced to twenty days of incarceration followed by six months of probation, the

---

[5] Mr. Chwiesiuk has not raised any Second Amendment challenge to the condition he seeks to modify. But any such argument would fail, because this Court is well within its statutory and Constitutional authority to restrict a defendant's access to firearms during the period of supervision. Chief Judge Boasberg thoroughly analyzed the application of the Second Amendment to the condition of probation. In *Shaw*, the defendant "challenge[d] a probation condition, which (as many probation conditions do) restricts a constitutional right." Limiting the Court's analysis to the validity of that probation condition, Chief Judge Boasberg approved of the Standard Condition of Supervision as to that defendant. *Shaw*, U.S. Dist. LEXIS 91065 at \*5. *See also District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) (noting that "the right secured by the Second Amendment is not unlimited," and it does not protect a right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."); *cf. New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156 (2022) (repeatedly stating that the amendment protects the rights of "law-abiding" citizens).

Standard Conditions of Supervision ordered by the Court contained the full prohibition against possession of a firearm. *Id.*, ECF No. 45, p. 5.

As previously mentioned, the government could find only one case in which a Court in the District of Columbia removed the prohibition against possession of firearms after imposing it as a Standard Condition of Supervision. *United States v. Jenny Cudd*, 21-CR-68 (TNM), ECF Nos. 96, 99-101. The sentence in that case was a term of probation of two months. *Id.* at ECF No. 97. In *Cudd*, the court appears to have based its modification on a specific finding that the defendant was someone who "credibly fears for her safety." *Id*. No such claim has been made here.

The U.S. Sentencing Guidelines lists out its "Standard" Conditions that are "recommended for probation" in §5B1.3(c). Subsection (10) reads,

> The defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (*i.e.*, anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

In an unpublished *per curiam* opinion, the Sixth Circuit held that the prohibition on firearms possession was reasonable after the defendant in that case was convicted of the misdemeanor offense of failing to maintain proper records as required of a federal firearms dealer. *United States v. Lester*, No. 94-6597, 1995 U.S. App. LEXIS 36189, at *1 (6th Cir. 1995). More recently, a District Judge from the Western District of North Carolina held that the firearm restriction imposed by a state court was reasonable after a "criminal contempt conviction relating to an angry domestic dispute." *Benzing v. North Carolina*, 2020 U.S. Dist. LEXIS 110193, at *16 (W.D.N.C. June 23, 2020). The prohibition against supervisees or probationers possessing firearms—even before a conviction—"has been found to be critical in most cases because it safeguards the Pretrial Services officers who visit the home in the course of supervision." *United*

*States v. Snead*, 2014 U.S. Dist. LEXIS 14673, at *27 (D.R.I. Feb. 4, 2014) (internal quotation omitted).

Just a few months ago, Judge Randolph D. Moss of this District *denied* a January 6 defendant's request to remove the prohibition against firearms as a Standard Condition of Supervision. The defendant in that case had pleaded guilty to a single count, the Class B misdemeanor offense of Parading, Demonstrating, or Picketing in a Capitol Building, and was sentenced to a term of probation of two years. *United States v. Mileur*, 21-CR-248 (RDM), ECF No. 102. The Standard Conditions of Supervision included the firearms prohibition. *Id*. at p. 3. The defendant moved for the removal of this condition on the grounds that he needed to protect himself from violent moose attacks. *Id*. at ECF No. 101. The government objected, *id.* at ECF No. 108, as did the U.S. Probation Office, *id.* at ECF No. 109. On April 27, 2023, Judge Moss entered a MINUTE ORDER denying the motion. His reasoning was based in part on Probation's reasoning that the firearm special condition at issue here, "allows the probation office to supervise the probationer without risk to safety caused by the possession of weapons." *Id*., Minute Order, Apr. 27, 2023. This Court should similarly deny Mr. Chwiesiuk's motion for a modification of the conditions of his release.

[THIS SPACE INTENTIONALLY LEFT BLANK]

### III. CONCLUSION

For the foregoing reasons, Karol Chwiesiuk's Motion to modify his conditions of release should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

DATED: August 23, 2023         By: _____
Sean P. Murphy
Assistant U.S. Attorney
D.C. Bar No. 1187821
On Detail from the District of Puerto Rico
Torre Chardon, Ste. 1201
350 Carlos Chardon Ave.
San Juan, PR 00918
787-766-5656
sean.murphy@usdoj.gov