**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 21 CR 536 |
| | ) | Hon. Judge Ana C. Reyes |
| MR. KAROL CHWIESIUK, | ) | |
| | ) | |
| Defendant. | ) | |

**MR. KAROL CHWIESIUK'S SENTENCING MEMORANDUM**

Now comes the Defendant, **Mr. Karol Chwiesiuk**, by his attorney, the Law Office of
Nishay K. Sanaa through Mr. Nishay K. Sanan and Ms. Cece White, and respectfully submits to
this Honorable Court his Sentencing Memorandum pursuant to Federal Rule of Criminal
Procedure 32(c), *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, as well as the
factors enumerated in 18 U.S.C. § 3553(a).

Mr. Chwiesiuk respectfully requests that this Court set his offense level at 8 with a
criminal history category I, and impose a sentence of mandatory supervised release (MSR) or
probation, with community service. In support thereof, Mr. Chwiesiuk states as follows:

**I.      BACKGROUND**

Ms. Agnieszka Chwiesiuk and her brother, Karol Chwiesiuk, were charged in connection
to the events occurring at the United States Capitol on January 6, 2021. Both defendants were
changed with entering and remaining in a restricted building in violation of 18 U.S.C.§
1752(a)(1) (County One); disorderly or disruptive conduct in a restricted building in violation of
18 U.S.C. § 1752(a)(2) (Count Two); disorderly conduct in a Capitol Building in violation of 40
U.S.C. § 5104(e)(2)(D) (Count Four); and parading, demonstrating, or picketing in a Capitol

Building in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five). Dkt. 54. Karol Chwiesiuk was further charged with entering or remaining in a room designated for the use of a member of Congress in violation of 40 U.S.C. § 5104(e)(2)(C)(i) (Count Three). *Id.*

The case proceeded to jury trial on August 7, 2023. Although Karol Chwiesiuk testified in his own defense, Agnieszka Chwiesiuk did not. On August 10, 2023, the jury began deliberating and returned a verdict the following day. The jury reached a verdict of guilty of Counts 1, 2, 4, and 5 as to defendants Agnieszka and Karol Chwiesiuk, but found Karol Chwiesiuk not guilty of Count 3.

Mr. Chwiesiuk has been under conditions of pretrial release since his arrest on June 11, 2021 in Chicago, Illinois. He remains on pretrial release at the time of sentencing, and has had no reported violations of those conditions.

## II.    SENTENCING MEMORANDUM

Post *Booker*, a district court has significantly more freedom to fashion a sentence which is appropriate for the individual defendant before the court. Although a district court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range," those Guidelines are only advisory. *See United States v. Turner*, 21 F.4th 862, 864 (D.C. Cir. 2022), citing *Booker*, 543 U.S. 220, 245. Sentencing courts are required to consider the applicable Guidelines as well as all the factors listed in 18 U.S.C. § 3553(a) when imposing a sentence. *Turner*, 21 F.4th at 864; 18 U.S.C. § 3553(a). Where the defense raises § 3553(a) factors in requesting a below guidelines sentence, the court must conduct a meaningful analysis of how those factors apply to the facts and explain why its sentence is appropriate under § 3553(a).

Pursuant to 18 U.S.C. § 3582, when this Court considers the imposition of a term of imprisonment and the length thereof, it must also recognize that "imprisonment is not an

appropriate means of promoting correction and rehabilitation." *Id*. The primary directive in §

3553(a) is that the court must impose a sentence that is "sufficient but not greater than

necessary" to achieve the goals of sentencing. When determining the appropriate sentence, "no

limitation shall be placed on the information concerning the background, character, and conduct

of [the defendant] which a court of the United States may receive and consider for the purpose of

imposing an appropriate sentence." 18 U.S.C. § 3661.

Our jurisprudence makes clear that one of the main goals of utilizing sentencing factors is

to consider each defendant appearing before the court as an individual. As the Supreme Court

explained in *Koon v. United States*, 518 U.S. 81, 113 (1996), "[i]t has been uniform and constant

in the federal judicial tradition for the sentencing judge to consider every convicted person as an

individual and every case as a unique study in the human failings that sometimes mitigate,

sometimes magnify the crime and punishment to ensue." The basis of this tradition is the notion

that the "punishment should fit the offender and not merely the crime." *Williams v. New York*,

337 U.S. 241, 247 (1949); *see also Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937)

("for the determination of sentences, justice generally requires consideration of more than the

particular acts by which the crime was committed and that there be taken into account the

circumstances of the offense together with the character and propensities of the offender,"). With

those considerations in mind, Mr. Chwiesiuk urges this Court to look not only at the offense

conduct and its context, but also at his unique circumstances when crafting an appropriate

sentence.

### a. The Nature and Circumstances of the Offense

Despite the counts of conviction being misdemeanors the conduct underlying the charges could not be more serious, but the nature of the offense is a polarizing one. The vast majority of Americans see the events of January 6, 2021 as a riot or an insurrection, the likes of which have never been seen in our country. The small minority who participated in January 6, 2021 viewed it as a protest, or for the more active participants, a fight to protect this country. While most people see through the narrative of the latter view, many of those who participated in the events of January 6 simply do not believe they did anything wrong. Clearly there is a larger, more systemic issue at play here – one being sold by certain media outlets, echo-chambers on social media, and online forums. Despite that, this Court's job is to evaluate the conduct of one person: Karol Chwiesiuk.

In doing so, this Court should note that Mr. Chwiesiuk and his sister went to the Capitol grounds much later than many other defendants in similar cases. According to the Capitol Police Captain who testified at the joint trial, protesters and rioters broke through the Senate Wing Door and nearby window at 2:12 p.m. Tr. Trans., p. 113. According to the government, the Chwiesiuks did not enter the Senate Wing Door until 2:57 p.m., and remained inside for only nine minutes. Dkt. 130, pp. 12, 14. While on their way to the Capitol and while inside of it, the Chwiesiuks did not injure or attempt to injure anyone, nor did they engage in boisterous rhetoric which might encourage other protestors. What the Chwiesiuks participated in was far more serious than their individual conduct in terms of consequences for our nation.

### b. The History and Characteristics of Ms. Chwiesiuk

Unlike many defendants appearing in federal courts for sentencing, Mr. Chwiesiuk had a seemingly uneventful upbringing, devoid of abuse or need. Mr. Chwiesiuk was raised by two,

loving parents who have been married for at least thirty-two years. His parents both maintained employment and raised Mr. Chwiesiuk in a neighborhood of Chicago, Illinois. Mr. Chwiesiuk is college-educated and generally has been able to obtain and keep jobs in law enforcement.

After Mr. Chwiesiuk's arrest in this case, he was taken off active duty with the Chicago Police Department and placed on desk duty with the 311 (City of Chicago non-emergency number) call center. Based on his arrest, however, the Illinois State Police revoked his Firearm Owners Identification Card, which forced him to relinquish his firearms. It was at that time the Chicago Police Department placed Mr. Chwiesiuk on unpaid leave, but he has yet to be terminated. His employment status depends in some part on how this case resolves. Nothing about Mr. Chwiesiuk's history or characteristics explain his conduct in this case, likely, because his actions were ideological, not based on need or greed as in so many other cases.

### c. The Kinds of Sentences Available and the Sentencing Range Calculated under the Sentencing Guidelines

The jury convicted Mr. Chwiesiuk of Counts 1, 2, 4, and 5. For purposes of identifying the appropriate Guideline range in this case, Counts One and Two are grouped pursuant to USSG § 3D1.2(b), while the USSG do not apply to Counts Four or Five because they are Class B or C misdemeanors. *See* PSR, p. 10; USSG § 1B1.9.

Based on her convictions for Counts One and Two, Mr. Chwiesiuk faces a maximum statutory penalty of one year imprisonment pursuant to 18 U.S.C. §§ 1752(a)(1) and (2). For Counts Four and Five, Mr. Chwiesiuk faces a maximum sentence of imprisonment of six months. PSR, p. 16; 40 U.S.C. §§ 5104(e)(2)(C)(i) and (e)(2)(D). The Guidelines suggest a range of imprisonment from zero to six months for Counts One and Two. PSR, p. 16. Because the most serious offenses are in Zone A of the Sentencing Table, the Guidelines do not require a term of imprisonment. USSG § 5C1.1(f). The Guidelines allow for the sentences to run concurrently if

the sentence imposed on Count One or Two is adequate to achieve the total punishment. PSR, p. 16; *citing* USSG § 5G1.2(c).

Pursuant to 18 U.S.C. §§ 3561(c)(2) and 3564(b), Mr. Chwiesiuk is eligible for a term of probation of up to five years, with multiple terms of probation running concurrently. PSR, p. 16. Pursuant to the Guidelines for Counts One and Two, community confinement, home detention, or intermittent confinement may be imposed. USSG § 5B1.1, comment n.1(a).

The statutory provisions allow for a term of MSR of not more than one year (18 U.S.C. § 3583(b)(3)) for Counts One and Two, while the Guidelines suggest that a term of MSR of one year is appropriate. USSG § 5D1.2(a)(3). In addition, the PSR lists numerous conditions of MSR, and Ms. Chwiesiuk offers no objections to those conditions.

The government seeks $500 in restitution, and Probation notes that. Probation also explains the various maximum fines and special assessments, along with the relevant Guideline provisions. Ms. Chwiesiuk requests that if restitution is ordered, a separate fine not be assessed.

### d. Application of USSG § 3C1.1 is inappropriate in this case

Mr. Chwiesiuk agrees with the assessment of United States Probation that the USSG are correctly calculated in the PSR and as applied to him. Further, Mr. Chwiesiuk objects to the government's argument that USSG § 3C1.1 applies in this case on the basis of the decision in *United States v. Alford*, 2024 U.S. App. LEXIS 318 *(Jan. 5, 2024). Lastly, Mr. Chwiesiuk objects to any finding that the testimony he offered in his defense at trial obstructed or impeded justice.

On January 11, 2024 the government submitted an objection to the PSR in the form of a letter. *See* Letter of Government attached hereto as Exhibit A. Specifically, the government objected to Probation's finding that it had not "received any information to suggest that the

defendant willfully impeded or obstructed the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction." PSR, ¶ 32. The government offered this recent objection not because Mr. Chwiesiuk altered his conduct; instead it was in light of the recent decision by the D.C. Circuit upholding Mr. Alford's sentence. As explained below, the *Alford* decision is not on point here.

The government is correct that here, like in *Alford*, the defendant took the stand to testify in his own defense. That is where the similarities end.  In *Alford*, the jury convicted the defendant on all four counts with which he was charged. 2024 U.S.App. LEXIS 318, *5. By comparison, the jury acquitted Mr. Chwiesiuk of Count Three after he took the stand in his own defense, meaning the jury believed his testimony, at least in part. While the jury may have been unconvinced by Mr. Chwiesiuk's testimony when considered with all of the other evidence of the case "as to the remaining counts, there was nothing misleading to support the obstruction enhancement. Rather the testimony he provided was consistent with the Government's video evidence.

*Alford* is distinguishable for other reasons, not the least of which is that in *Alford*, the defendant did not object to application of the enhancement under USSG § 3C1.1. "Alford conceded below that the enhancement was proper and he does not contest its application on appeal." 2024 U.S.App. LEXIS 318, * 22. The defendant only contested the resulting sentencing, not application of the enhancement. Unfortunately for the defendant in *Alford*, his sentence fell within the USSG range after application of the uncontested enhancement. Because Mr. Alford received a within Guidelines sentence, the *Alford* court noted that he must overcome a "presumption of reasonableness" on appeal, and found that he "fail[ed] to meet the high bar to show an abuse of discretion." *Id.* at *20. The circuit court did not review de novo the application

of the enhancement under § 3C1.1 to the facts of Mr. Alford's case to evaluate the result. Instead, the circuit court applied a highly deferential standard to the ultimate sentence which resulted, at least in part, because Mr. Alford did not object to the application of § 3C1.1.

Here the application notes to USSG § 3C1.1 clearly demonstrate that U.S. Probation's conclusion was correct: there is nothing in the record to support application of an enhancement for obstructing or impeding justice. Mr. Chwiesiuk agrees with that result and objects to the government's position that application of § 3C1.1 is appropriate based on *Alford*. The facts of the case have not changed and the *Alford* decision does not support use of the enhancement.

### e.   The Need for the Sentence Imposed to Reflect the Goals of Sentencing

For the reasons explained below, a Guidelines sentence of imprisonment will not accurately reflect the goals of sentencing. A lengthy sentence of MSR or probation, however, should achieve those goals.

#### i.   The need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

The Chwiesiuks did not travel from Chicago to Washington D.C. because they wanted to break the law. They traveled to the Capitol to see Donald Trump speak and hear what he had to say about what they believe to be a stolen election. Whether this Court sentences Mr. Chwiesiuk to a term of imprisonment or probation, it is unlikely he will change his political outlook and beliefs related to this prosecution. Given that, Mr. Chwiesiuk requests some leniency in light of the exceptionally low Guidelines range in this matter.

#### ii.   The need to afford adequate deterrence to criminal conduct

Deterrence is a factor to be considered in relation to the public at large as well as a factor to consider specific to Mr. Chwiesiuk. A sentence of probation is more than adequate to provide a deterrent effect to the general public, in large part because of the unprecedented

investigation by the federal government and far-reaching prosecution by the Department of Justice. The amount of resources dedicated to tracking down the individuals present at the Capitol and then prosecuting them for various crimes has not gone unnoticed by the American public. The more defendants who are sentenced, even to relatively small sentences, the more the American public sees that the events of January 6 cannot happen again, and if they do, offenders will be held accountable.

For Mr. Chwiesiuk specifically, any sentence will offer some level of deterrence, because once he has finished fighting this case, he will need to fight for his job. A sentence of probation will accomplish the goals of general and specific deterrence to prevent both Mr. Chwiesiuk and anyone else from ever following in the footsteps of January 6th defendants.

### iii.  The need to protect the public from further crimes of the defendant

Besides the case at bar, Mr. Chwiesiuk has no other incidents of criminality. The acts which led to his conviction were aberrant behavior for Mr. Chwiesiuk.  This Court should have no doubt that it will ever see Mr. Chwiesiuk come before it again for any criminal purpose.

### f.  Similarly Situated Defendants

In fashioning an appropriate sentence, this Court is also required to consider the need to avoid "unwarranted sentencing disparities" among defendants who have been found guilty of similar conduct. In Mr. Chwiesiuk's case, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses an offenders similarly." *United States v. Alford*, 2024 U.S.App. LEXIS 318, *20 (D.C. Cir. 2024), *quoting United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023). Here, Mr. Chwiesiuk's Guideline range is zero to six month's incarceration, and he respectfully urges this Court to sentence him to a term of

MSR or probation, in keeping with the low end of the Guidelines. Such a sentence would also keep him in line with other, similarly situated defendants.

The government urges the Court to sentence Mr. Chwiesiuk above the Guideline range to a term of 12-months' incarceration. According to recent data, in the majority of the 700 sentencings to date, courts have issued punishments under the Guideline range and less than that requested by the government.[1] Of those sentenced in January 6-related cases as of January 5, 2024, the courts have meted out below-guidelines sentences in 67 percent of the cases. *Id*. Specific to the 482 misdemeanants sentenced as of January 2, 2024, the court issued below-guidelines sentences in 81 percent of those cases. *Id*.

In its sentencing submission the government suggests cases which it argues involve similarly situated defendants. Mr. Chwiesiuk compares and distinguishes one of the cases provided by the government, and offers an additional three cases (all co-defendants) for comparison. For ease of reference, Mr. Chwiesiuk has provided the chart below to compare certain aspects of the cases at issue, with discussion to follow.

|  | Charges | Government Recommended Sentence | Plea or Trial | Actual Sentence Imposed |
|---|---|---|---|---|
| Micah Coomer; 23-CR-124 | 40 U.S.C. § 5140(e)(2)(G) | 30 days' incarceration and restitution | Plea | 48 months' MSR; 279 hours community service; $500 restitution |
| Dodge Dale Hellonen; 23-CR-144 | 40 U.S.C. § 5140(e)(2)(G) | 21 days' incarceration and restitution | Plea | 48 months' probation; 279 hours community service; $ |

---

[1] *See* Tom Jackman and Spencer Hsu, *Most Jan. 6 defendants get time behind bars, but less than the U.S. seeks*, The Washington Post, January 5, 2024, available at https://www.washingtonpost.com/dc-md-va/2024/01/05/january-6-riot-sentences/ (last accessed Jan. 15, 2024).

| Joshua Abate; 23-CR-144 | 40 U.S.C. § 5140(e)(2)(G) | 21 days' incarceration and restitution | Plea | 12 months' probation; 279 hours community service; $500 restitution |
|---|---|---|---|---|
| Stacy Wade Hager; 21-CR-381 | 18 U.S.C. §§ 1752(a)(1) and (a)(2); 40 U.S.C. §§ 5104(e)(2)(D) and (G) | 12 months' incarceration and restitution | Bench Trial | 7 months; incarceration; $500 restitution |

Beyond the simple facts of the recommendations made by the government for the above-listed defendants and the resulting sentences, the government's justifications for those recommendations are significant. These recommendations by the government demonstrate significantly more egregious behavior by defendant Hager and co-defendants Abate, Coomer, and Hellonen.

In the case of defendant Hager, the government recommended a 12 month term of incarceration because Hager: "(1) anticipated violence on January 6, and packed his bags as to prepare for hand-to-hand fighting; (2) came to Washington, D.C. fixated on the idea that only his preferred presidential candidate, Donald Trump, could take office; (3) was in a position to observe the violence on January 6, and yet taunted police as he made his way deeper into the Capitol to disrupt the Congressional proceedings; (4) continues to espouse conspiracy theories that January 6 was a hoax and that police invited rioters into the Capitol – despite what he saw firsthand; and (5) has expressed no remorse for his actions on January 6, and instead romanticizes the violent actions of rioters." *See* 21-CR-381, Dkt. 58, p. 2. According to the government, Mr. Hager entered the Capitol at 2:34 p.m. and remained inside for approximately 13 minutes. However, prior to entering Mr. Hager was present at the Capitol for some time engaging in riotous behavior. Even with all of this, the government recommended a sentence

within the Guideline range of 6-12 months. By comparison, codefendants Abate, Coomer, and Hellonen demonstrated even more problematic behaviors and actions.

The codefendants were all active duty Marines who entered the Capitol at 2:20 p.m., only seven minutes after the initial breach. They remained inside for 52 minutes, exiting at 3:12 p.m. Despite being nearly first on scene and staying far longer than Mr. Hager or the Chwiesiuks, the government recommended light sentences for each codefendant. The basis for the government's recommendation details the worst behavior of anyone discussed herein, noting that Coomer, Abate, and Hellonen: "(1) were active-duty United States Marines when they unlawfully breached the United States Capitol on January 6; (2) entered the Capitol at the Senate Wing Door, the initial breach point on January 6, minutes after that door was initially breached, amid signs of the violent breach that were still fresh and obvious, (3) remained inside the Capitol for a long time, approximately 52 minutes; (4) joined with other rioters in provocative chants which further riled up the mob and was a rallying cry to continue the riot; (5) were inside the rotunda when other rioters engaged in aggressive physical skirmishes with police; and (6) although admitting their unlawful conduct on January 6, have yet to genuinely express sincere remorse for that conduct." *See* 23-CR-144, Dkt. 44, p. 2. Despite all the above conduct, the government recommended extremely lenient sentences for these codefendants, regardless of the fact they did not express sincere remorse.

Lastly, the government recommends sentences of 12 and 8 months' incarceration for Mr. Chwiesiuk and Ms. Chwiesiuk, respectively. These recommended sentences are above the Guideline range which Probation suggests and the undersigned supports. More to the heart of the issue, however, is that the government makes these recommendations despite the comparatively innocuous behavior of the Chwiesiuks.

As the basis for its sentencing recommendation, the government argues that the Chwiesiuks: "(1) entered the Capitol at the Senate Wing Door, the initial breach point on January 6, and they did so notwithstanding the signs of the violent breach, including broken windows and a blaring, audible alarm; and (2) neither has accepted responsibility nor expressed remorse for their conduct on January 6." *See* 21-CR-536, Dkt. 130, p.2. The Chwiesiuks did not arrive until 2:57 p.m. and only remained inside for approximately nine minutes. While this conduct is still illegal, it is significantly less serious than the conduct of Mr. Hager, or codefendants Coomer, Abate, and Hellonen.

In light of the cases cited above as well as all of the other comparative cases offered by the government, sentences of MSR or probation are appropriate for both Chwiesiuks.

### III.     CONCLUSION

Despite the context of this case, this Court should look at the individual before the court and determine what sentence best fits him to achieve the goals of sentencing. Here, Mr. Chwiesiuk submits that a sentence at the low end of the guidelines – MSR or probation and community service - will satisfy the goals of sentencing while allowing him to try and keep his employment while rebuilding his life.

Respectfully submitted this 17th day of January, 2023.


/s/  Nishay K. Sanan
Mr. Nishay K. Sanan
nsanan@aol.com


/s/  Cece White
Ms. Cece White
cece@sananlaw.com


Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1242
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111